[Civ. No. 1873. Fourth Appellate District.—April 19, 1938.]

W. C. DORRIS et al., Respondents, v. GEORGE HENRY CROWDER, an Insane Person, etc., Appellant.

Siemon & Claflin for Appellant.

W. C. Dorris and H. E. Schmidt, *in pro. per.,* for Respondents.

MARKS, J.—This is an action brought to recover the reasonable value of services rendered by plaintiffs in defending the defendant against a charge of murder. Plaintiffs had judgment and defendant has appealed.

Two of the three questions presented are novel and of first impression in California. They are: (1) Can attorneys appointed by the court to defend an insane person charged with murder in the first degree charge him a fee when, after he had been found insane, it was discovered that he was possessed of an estate of nearly $12,000.00? and (2) do the provisions of the Probate Code (secs. 705 to 714 inc.) requiring a claimant to file a verified claim against the estate of a deceased person and to bring suit on a rejected claim within three

months after written notice of its rejection, apply to claims against the estate of an incompetent person?

█ Defendant urges a third ground for reversal of the judgment, namely, that the $1500 awarded plaintiffs for their services is excessive. There is no merit in this contention. The appeal is on the judgment roll alone. In the absence of the evidence, we must presume that there was substantial, competent and material evidence before the trial court supporting the findings and judgment. Further, as said in *Theisen* v. *Keough*, 115 Cal. App. 353, at p. 362 [1 Pac. (2d) 1015, 1019]:

"It is too well settled to require citation that the value of attorney's services is a matter with which a judge must necessarily be familiar. When the court is informed of the nature and extent of such services, its own experience furnishes it with every element necessary to fix their value. (*Spencer* v. *Collins*, 156 Cal. 298, at p. 307 [20 Ann. Cas. 49, 104 Pac. 320].)"

█ We have been cited to and have found no case in California deciding the first question presented. There is *dicta* on the question in the old case of *Rowe* v. *Yuba County*, 17 Cal. 61, where it is said:

"Besides, it is part of the general duty of counsel to render their professional services to persons accused of crime, who are destitute of means, upon the appointment of the Court, when not inconsistent with their obligations to others; and for compensation, they must trust to the possible future ability of the parties."

It has been held that while an incompetent person cannot make a valid and enforceable contract with an attorney at law, if he does engage an attorney and the attorney performs services for the incompetent, the attorney may recover the reasonable value of his services from the incompetent's estate. (*In re Estate of Nelson*, 111 Cal. App. 744 [296 Pac. 122].) In *Estate of Doyle*, 126 Cal. App. 646 [14 Pac. (2d) 920], it was said:

"So far as the record in the instant case shows, no express contract was ever entered into by the appellant and decedent, and therefore sections 39 and 40 of the Civil Code, which refer to express contracts, are not applicable. Under the circumstances here presented, section 38 of the Civil Code: 'A person entirely without understanding has no power to

make a contract of any kind, but he is liable for the reasonable value of things furnished to him necessary for his support or the support of his family,' may be invoked, in order to bind the estate of the incompetent upon a contract implied in law for the payment of necessaries, because we are inclined to the belief that services rendered by an attorney in an attempt to restore an incompetent to capacity should be classed as necessaries of life. Circumstances may well be imagined, where a guardian as well as members of the family of the incompetent, turn a deaf ear to his urgent request that he be restored, and it would seem unjust to deny reasonable compensation to the attorney, who is instrumental in bringing such a situation to the attention of the court, in order that the status of the incompetent be determined.''

To the same effect are *Fitzpatrick's Committee* v. *Dundon,* 179 Ky. 784 [201 S. W. 339] ; *McKee's Administrator* v. *Ward & Dickson,* 18 Ky. Law Rep. 987 [38 S. W. 704] ; *In re Freshour,* 174 Mich. 114 [140 N. W. 517, Ann. Cas. 1915A, 726, 45 L. R. A. (N. S.) 67] ; *Carter* v. *Beckwith,* 128 N. Y. 312 [28 N. E. 582] ; *Rautenkranz* v. *Plummer,* 75 Ind. App. 269 [130 N. E. 435].

*Askey* v. *Williams,* 74 Tex. 294 [11 S. W. 1101, 5 L. R. A. 176], is a case in which attorneys obtained judgment against an infant for a fee earned in defending him in a criminal case. In affirming the judgment the Supreme Court of Texas said:

''The contracts of an infant for necessaries are neither void nor voidable, and we are of opinion that the services of an attorney should be held necessary to an infant, where he is charged by an indictment with crime. His life or his liberty and reputation are at stake, and it would be unreasonable to deny him the power to secure the means of defending himself. He may contract for food and raiment suitable to his condition in life, though they be such as are not demanded by his absolute wants, and it is not to be questioned that the immunity from punishment and disgrace is a matter of far more importance to his welfare. It has accordingly been held that reasonable attorney's fees in defense of a criminal action brought against an infant are necessaries. *Barker* v. *Hibbard,* 54 N. H. 539 [20 Am. Rep. 160]. See, also, *Munson* v. *Washband,* 31 Conn. 303 [83 Am. Dec. 151]. It

follows that by his contract Lightfoot was bound to pay plaintiff the reasonable value of his services.''

Defendant urges that since plaintiffs were appointed by the court to represent defendant their services were entirely voluntary and in performance of their duty to the court and that no implied contract to pay for their services can arise from such situation.

Section 987 of the Penal Code provides as follows:

''If the defendant appears for arraignment without counsel, he must be informed by the court that it is his right to have counsel before being arraigned, and must be asked if he desires the aid of counsel. If he desires and is unable to employ counsel, the court must assign counsel to defend him.''

Under this section it must appear that a defendant both desired counsel and that he was unable to employ counsel before the trial court must appoint an attorney to represent him. In the instant case the defendant told the court he did not desire counsel and entered a plea of guilty to the charge of murder in the first degree. After the entry of the plea the trial judge appointed plaintiffs to represent him. The plea of guilty was withdrawn and pleas of not guilty and not guilty by reason of insanity were entered. After a trial defendant was found to be insane. He is now confined in an asylum.

Under these circumstances the trial judge was fully justified in disregarding defendant's statement that he did not desire an attorney. Defendant was insane and it became the duty of the trial judge to see that his legal rights were properly protected.

At the time plaintiffs were appointed as attorneys for defendant it was not known that defendant had property and was financially able to employ and pay counsel. It, however, was a fact that defendant was able to employ and pay his counsel. Thus one necessary element was lacking to place the obligation upon the trial judge to appoint counsel and to require that the counsel appointed defend the case without compensation. Defendant was possessed of means. Counsel should not be required to defend, without compensation, a man of means who is charged with a crime.

Under the circumstances here presented, defendant should be held bound under an implied contract to pay the reasonable

value of such services, he having been able to employ and pay counsel, having received the benefit of their services and counsel not being required by the provisions of section 987 of the Penal Code to represent defendant free of charge.

■ Defendant maintains that the provisions of section 714 of the Probate Code are made applicable to guardianship proceedings by section 1606 of the same code; that plaintiffs' verified claim for their compensation was presented to the guardian on January 24, 1933, and was disallowed immediately thereafter; that the complaint in this action was not filed until December 20, 1933, more than three months after the rejection of the claim; that therefore recovery is barred by the provisions of section 714 of the Probate Code. From the view we take of the case it is not necessary for us to decide this interesting question.

The complaint charging defendant with murder was filed in the justice's court on December 21, 1931. A preliminary examination was had and he was held to answer. An information charging defendant with murder was thereafter filed in the superior court. In February, 1932, defendant was committed to the Mendocino State Hospital for the insane. J. H. Crowder was appointed guardian of his estate on March 21, 1932. Prior to that time he had no guardian.

Section 714 of the Probate Code provides in part as follows: "When a claim is rejected either by the executor or administrator or by the judge, written notice of such rejection shall be given by the executor or administrator to the holder of the claim or to the person filing or presenting it, and the holder must bring suit in the proper court against the executor or administrator, within three months after the date of service of such notice if the claim is then due, or, if not, within two months after it becomes due; otherwise the claim shall be forever barred. . . ."

It will be observed that the section clearly provides that the three months within which suit must be filed on a rejected claim does not start running until the date of the service of the written notice of rejection. There is nothing in the record before us to show that any written notice of rejection was ever served on either of plaintiffs. The trial court found that the cause of action was not barred by the provisions of section 714 of the Probate Code. As this is an appeal on the judgment roll we must assume that the

evidence supported this finding. If we assume, without holding, that section 714 of the Probate Code is applicable to guardianship proceedings we must further assume that either no written notice of rejection of the claim was ever served or that if one was served it was served within three months of December 20, 1933, when this action was instituted. It follows that the finding to the effect that the cause of action was not barred by the provisions of section 714 of the Probate Code cannot be disturbed here.

Judgment affirmed.

Barnard, P. J., and Jennings, J., concurred.