THE STATE OF MONTANA, Plaintiff and Respondent, *v.*
MARY LANGAN, Defendant and Appellant.

No. 11439.
Decided Oct. 8, 1968.
445 P.2d 565.

Edmund Sedivy (argued), Bozeman, for appellant.

Forrest H. Anderson, Helena, James R. Beck (argued), Helena, McKinley Anderson, Jr. (argued), Bozeman, Gene I. Brown (argued), Bozeman, for respondent.

MR. JUSTICE HASWELL delivered the Opinion of the Court.

This is an appeal by defendant from a conviction of illegal possession of marihuana. The case was tried by jury in the district court of Gallatin County.

The principal question on this appeal is the admissibility in evidence at defendant's trial of approximately two pounds of marihuana seized by law enforcement officers in a raid on defendant's residence in Bozeman. The trial judge ruled the marihuana admissible. We reverse.

On July 21, 1967, the Bozeman Chief of Police filed an affidavit for a search warrant before a justice of the peace who issued a search warrant authorizing a search of defendant and her residence for marihuana. About 1:00 a. m. on July 23, a group of Bozeman police and sheriff's personnel surrounded defendant's residence. One of the police officers, armed with the search warrant, knocked on the front door of defendant's residence. It was opened by one of defendant's house guests who in reality was a police informer.

The exact sequence of events thereafter is conflicting. In any event during the next few moments, the police had entered the house, had unlocked the back door allowing the sheriff's officers to enter, had placed defendant and her house guests under arrest without warrant, and had indicated they had a search warrant and were going to search the house. This they proceeded to do, finding various quantities of marihuana, totalling about two pounds in all, in numerous locations around defendant's residence. No marihuana was found on the person of defendant.

Defendant was charged with unlawful possession of marihuana, an attorney was appointed by the district court to represent her, and she entered a plea of "Not Guilty." Prior to trial defendant moved to quash the search warrant and to suppress the use of the marihuana as evidence at her trial. After hearing, the trial court denied this motion. During the course of the trial, the marihuana was admitted in evidence over defendant's objection. Defendant was convicted and her

motion for new trial was denied. This appeal by defendant is from the judgment of conviction and the order denying her a new trial.

The issues presented by defendant for review can be summarized as follows: (1) the admissibility in evidence of the marihuana, (2) sufficiency of the evidence to support the conviction, (3) the grant or refusal of nine jury instructions, (4) denial of fair trial to defendant by reason of alleged prejudicial publicity by news media during the course of trial.

The principal issue is the admission in evidence at the trial of about two pounds of marihuana seized by law enforcement officers under the circumstances previously set forth. Defendant contends that the marihuana was inadmissible because it was the product of an unlawful search and seizure in violation of the "search and seizure" provisions of the United States Constitution, the Montana Constitution, and Montana Statutes (Amendment IV, U.S. Constitution; Art. III, § 7, Montana Constitution; section 54-112, R.C.M.1947.) On the other hand, the State claims that the marihuana was lawfully found and seized pursuant to a valid search warrant or in the alternative as an incident of a lawful arrest. (Section 94-301-1 et seq., R.C.M.1947.)

Montana has a unique statute governing the issuance of search warrants in narcotics cases. Section 54-112, R.C.M.1947, provides in part as follows:

"If upon the sworn complaint of any person, it shall be made to appear to any judge of the district court that there is probable cause to believe that narcotic drugs are being * * * kept contrary to law, such judge shall * * * issue a warrant directed to any peace officer in the county commanding him to search the premises designated and described in such complaint and warrant, and to seize all narcotic drugs there found * * *. No warrant shall be issued to search a private dwelling occupied as such * * *." The meaning of this statute is clear, unambiguous, direct, and

certain. Under such circumstances the statute speaks for itself and there is nothing for the Court to construe or interpret. Dunphy v. Anaconda Company, 151 Mont. 76, 438 P.2d 660; Doull v. Wohlschlager, 141 Mont. 354, 377 P.2d 758, 759; Montana Chap., Nat Elec. Con. Ass'n v. State Bd. of Education, 137 Mont. 382, 352 P.2d 258; Vaughn & Ragsdale Co. v. State Board of Equalization, 109 Mont. 52, 96 P.2d 420. The plain language of the statute declares (1) that only a *district judge* can issue a search warrant for narcotics and, (2) that no search warrant can be issued to search a private residence for narcotics.

The search warrant in the instant case clearly violated the mandate of this statute. It was issued by an unauthorized person (a justice of the peace) and it authorized a search of a prohibited area (a private residence).

However, the State contends that this statute is inapplicable to the instant case. The State argues that the quoted statute applies only to *in rem* proceedings whose purpose is the seizure and destruction of contraband narcotics; that it has no application to *in personam* proceedings against the possessor, the purpose of which is to secure evidence to procure her conviction. In the latter case, according to the State, the general search warrant statutes apply, are issuable by a justice of the peace without prohibition against a search of a private residence, the search warrant in the instant case was issued thereunder, and that it is perfectly valid.

Thus, the question presented is whether the provisions of the Uniform Drug Act or the provisions of the Criminal Code govern the issuance of search warrants for contraband narcotics. This question has not heretofore been presented to nor decided by this Court.

The general statutes governing the issuance of search warrants are found in Title 94, R.C.M.1947, generally known as the Criminal Code, and have existed in their present form since before the turn of the century. The present Uniform Drug Act was enacted in this state in 1937. Its search war-

rant provisions were a carry over from the Prohibition Act which made the home a sanctuary for the possession of contraband liquor. In transplanting the search warrant provisions of the Prohibition Act into the Uniform Drug Act, the legislature created a similar sanctuary in the home for the possession of contraband narcotics.

The wisdom of the legislature in enacting such a law is not involved in the instant case. It may be that many law enforcement officials do not approve of such a law. It may be the general public does not approve of such a law. It may be that many judges do not approve of such a law. However, the power to change the law is in the legislature, not in the courts. The legislature will soon be in session, and if there is a grievance against this law, then the problem should be aired in that forum.

The Uniform Drug Act provided for regulation of the preparation, possession and sale of narcotic drugs; defined what constituted narcotic drugs; set up a licensing system and prescribed various regulations covering the manufacture, possession, sale and use of narcotic drugs; made it unlawful for any person to manufacture, possess, or sell any narcotic drug except as provided in the Act and prescribed criminal penalties upon conviction; provided for the issuance of search warrants for the seizure of narcotic drugs; provided for peace officers to arrest offenders and seize narcotic drugs under certain circumstances; forbid replevin of seized narcotic drugs; and repealed various specific statutes and "All Acts and Parts of Acts in Conflict Herewith." (Section 54-101 et seq., R.C.M. 1947.)

The general criminal code does not prohibit possession of marihuana nor make it a crime. Only in the specific Uniform Drug Act is the possession of marihuana prohibited, made a crime, and criminal penalties prescribed upon conviction. But for the provisions of the Uniform Drug Act, defendant in the instant case would not be subject to arrest and prosecution for unlawful possession of marihuana.

The comprehensive scope and contents of the Uniform Drug Act leave no doubt in our minds that the legislature intended it to cover the whole field of state narcotics regulation and control. This conclusion is further supported by the absence of other statutory controls. Absent the Uniform Drug Act, no state control over narcotics would exist.

But did the legislature intend that the search and seizure provisions of the Uniform Drug Act supersede or merely supplement the general search and seizure provisions of the Criminal Code with respect to narcotics? In view of the constitutional and statutory requirements of the respective judges, the scope and limitations on their respective jurisdiction, and the Montana procedure on judicial review, it is inconceivable that the legislature intended to prohibit a district judge from issuing a search warrant to search a private residence for narcotics and at the same time intended to permit such issuance by a justice of the peace.

Additionally, the search and seizure provisions of the Uniform Drug Act constitute a specific statute on a specific subject matter, viz., the issuance of search warrants to search for narcotics. On the other hand, the search and seizure provisions of the general criminal code are general statutes on a general subject matter, viz., the issuance of search warrants as an aid in enforcement of the criminal law irrespective of the particular crime involved. Where, as here, the provisions of the specific statute conflict with the general statute and cannot be harmonized to give effect to both, the specific statute controls over the general to the extent of the inconsistency. State ex rel. Ewald v. Certain Intoxicating Liquors, 71 Mont. 79, 227 P. 472; McAlear v. Unemployment Comp. Comm., 145 Mont. 458, 405 P.2d 219. And where a more recent statute conflicts with an earlier one, the conflicting provisions of the earlier statute are repealed. State v. Holt, 121 Mont. 459, 194 P.2d 651.

We are not impressed by the State's argument that the

search and seizure provisions of the Uniform Drug Act apply only to seizures for the purpose of destroying the narcotics, that so construed they do not conflict with the search and seizure provisions of the criminal code whose purpose is seizure of narcotics as evidence to procure conviction of possessors, and that therefore the two search and seizure statutes should be construed *in pari materia* giving effect to both. This distinction finds no support in the provisions of the Uniform Drug Act. It deals with searches and seizures of any contraband narcotics the possession of which is prohibited by its provisions. While it does provide a procedure for their destruction or sale following seizure under certain circumstances, it likewise provides a procedure for the prosecution of offenders under specified circumstances. No distinction based upon the purpose of the seizure can be found in the plain language of the Uniform Drug Act.

■ Accordingly, we hold that the provisions governing the issuance of search warrants for narcotic drugs set forth in section 54-112, R.C.M.1947, of the Uniform Drug Act are the sole and exclusive provisions governing the issuance of search warrants authorizing a lawful search and seizure of narcotic drugs as defined in said Act. Because the Uniform Drug Act confers no authority upon a justice of the peace to issue a search warrant for narcotics and because it absolutely prohibits the issuance of a search warrant to search a private residence for narcotics, the purported search warrant in the instant case was void and any seizure of narcotics thereunder was unlawful.

The State argues that even if the search warrant was void, the marihuana was seized as an incident of a lawful arrest. Hence the seizure was lawful and the marihuana was admissible in evidence.

■ It is well established as a general proposition that a valid search of premises under control of an arrested person may be made without a search warrant as an incident of a

566

lawful arrest. Wilson v. Schnettler, 365 U.S. 381, 81 S.Ct. 632, 5 L.Ed.2d 620; United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653; Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399; Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145. However, this general principle is inapplicable under the facts of the instant case.

The testimony of Officer McDowell indicated that he was handed the search warrant by Chief of Police Cutting and instructed to go to defendant's residence and "to observe what was there and use the search warrant." Officer McDowell, pursuant to these instructions, walked to defendant's residence, knocked on the front door, and entered defendant's residence. He testified that his purpose in going to defendant's residence was to search. Officer Duncan testified that his purpose in being at defendant's residence was "To help investigate and locate marihuana," and that he was there to search the premises. Chief of Police Cutting testified that his purpose in being at defendant's residence was "To make a search of the Langan residence." Sheriff Anderson testified that his purpose in going into defendant's residence was to search for marihuana and other narcotics. Deputy Sheriff Smith testified he had been instructed by police officers or the county attorney's officers that they were going to search defendant's residence. Deputy Sheriff Gee testified that his purpose in going to the Langan residence was to search.

In view of this testimony by the State's own witnesses, it is clear that the purpose of entry into defendant's residence was to search for marihuana. Where the purpose of entry into a building is to search rather than to arrest, seizure of contraband therein cannot be justified as an incident of a lawful arrest. Jones v. United States, 357 U.S. 493, 78 S.Ct. 1253, 2 L.Ed.2d 1514; United States v. Harris, 6 Cir., 321 F.2d 739. In the instant case we have an arrest incidental to search, not a search incidental to an arrest.

Here entry into defendant's residence was accomplished

by means of a void search warrant. Irrespective of whose testimony among the State's witnesses is accepted as to the events and their sequence following the opening of the door in response to Officer McDowell's knock, one fact is crystal clear—Officer McDowell had the void search warrant in his hand and used it as his authority for entry into defendant's residence. An entry accomplished by means of void process is an illegal entry.

For the foregoing reasons, the seizure of the marihuana cannot be upheld as an incident of a lawful arrest.

As an entry is lawful or unlawful at the time it is made, the subsequent search has the same legal character as the entry which made it possible. Morrison v. United States, 104 U.S.App.D.C. 352, 262 F.2d 449. Thus where, as here, the entry into defendant's residence was unlawful, the search was likewise unlawful as it was the product of the illegal entry. And a search is lawful or unlawful when it starts and does not change that character from its success. Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332. Thus a search unlawful in its inception is not validated by what it turns up. Wong Sun v. United States, 371 U. S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441. In the instant case the illegality of the entry into defendant's residence and the search thereof are not validated or legalized by the subsequent discovery of contraband marihuana therein.

For the foregoing reasons, we hold that the marihuana was secured as a result of an illegal search and seizure.

Evidence secured as a result of an illegal search and seizure is not admissible in evidence at the trial of a person charged with a crime in a state court. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081. Accordingly, we hold the marihuana was inadmissible in evidence at defendant's trial in the instant case.

We next consider whether the erroneous admission of the marihuana in evidence requires reversal of defendant's

conviction by reason of prejudicial error or whether only harmless error not affecting the merits is involved. The rest of prejudicial error requiring reversal is this: Is there a reasonable possibility that the inadmissible evidence might have contributed to the conviction? Fahy v. State of Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171. An error in admitting plainly relevant evidence which possibly influenced the jury adversely to defendant cannot be considered harmless error. Chapman v. State of California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705. To consider that the erroneous admission in evidence of two pounds of marihuana discovered in numerous locations in defendant's residence may not have contributed to her conviction is beyond doubt reasonably possible. We hold that the admission of marihuana in the instant case constitutes reversible error.

We pass now to consideration of defendant's second issue presented for review, the sufficiency of the evidence to support conviction. Under our previous holding in this case, this issue is now germane only to the extent of determining whether this case should be dismissed or remanded to the district court for new trial.

Absent the discoveries made by the officers after illegal entry into defendant's residence, there was no evidence introduced at the trial that would support conviction. Accordingly, a new trial cannot be granted.

In view of the foregoing, it becomes unnecessary to consider the other issues assigned for review by defendant.

The conviction of defendant is reversed and the case remanded to the district court with instructions to dismiss.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES ADAIR, CASTLES, and JOHN CONWAY HARRISON, concur.